## UNITED STATES v. NATIONAL BANK OF ASHEVILLE et al.

(Circuit Court, W. D. North Carolina. March 3, 1896.)

1. NATIONAL BANKS—LIABILITY FOR DEPOSITS OF POSTMASTER.

    A national bank, not designated as a depository of public moneys, which receives, under the permissive authority of law and the regulations of the post-office department, deposits of money made by postmasters in their official capacity, thereby assumes a fiduciary relation to the government, and becomes a bailee of the government, so as to become directly responsible to it for any moneys which it knowingly or negligently allows the postmaster to withdraw by private check, or otherwise appropriate to his own use; and where, after the removal of the postmaster, he deposits a sum

to make good a shortage in his balance, the bank cannot apply it in discharge of a debt due it from him personally.

2. SAME—EQUITY JURISDICTION.

By reason of this trust relation, equity has jurisdiction of a bill by the government to require an account and settlement of the moneys so deposited with it; and this remedy is not affected by the fact of a cumulative remedy at law against the postmaster on his official bond.

This was a bill in equity by the United States against the National Bank of Asheville and others to require an accounting in respect to public moneys deposited with it by defendant George W. Cannon, as postmaster at Asheville. Defendants filed a general demurrer, which was duly set down for argument, and has been heard and considered on written arguments and briefs.

R. B. Glenn, U. S. Atty., and Moore & Moore, for the United States.

Davidson & Jones, for defendant national bank.

DICK, District Judge. The bill alleges in plain, positive, and specific terms, that defendant George W. Cannon was duly appointed postmaster at Asheville on the 27th day of March, 1889, and soon thereafter entered upon the duties of said office, and continued to discharge the same until 17th of April, 1893, when he was removed from office; that during his term of office, and between the 1st of April, 1892, and the 17th of April, 1893, he, in his official capacity, took into his possession the sum of $40,594.04, moneys received from and in behalf of the United States, and deposited the same with the codefendant National Bank of Asheville, and received from said bank a "deposit book or pass book," showing a statement of the said deposits to the account of Cannon, as postmaster; that the defendant bank had full knowledge that the public moneys so deposited were the moneys and property of the United States. The bill further alleges that on the 13th of May, 1893, after his removal from office, the said Cannon deposited with the defendant bank the sum of $600, to be applied as a credit to his said account as postmaster, in substitution of moneys which he had checked out of said bank, and appropriated to his own private use. The bill further alleges that the defendant had full knowledge of the removal of Cannon from his office on the 17th of April, 1893, and that the balance of $4,764.82 on his deposit account as postmaster on the 13th of May, 1893, were the moneys of the United States, and not the funds of Cannon, as they were deposited in the fiduciary capacity of postmaster and financial agent of the United States.

In considering this case on demurrer, as I am of opinion that the facts clearly and specifically alleged in the bill are amply sufficient to authorize the equitable relief insisted on by complainants, I deem it unnecessary to refer to the force and effect of the allegations of the bill as to the claims and pretenses of the defendant bank in justification and defense, and the contrary charges and averments made in the bill. These are matters which can be fully set forth in subsequent pleadings, and be investigated, developed, and determined on the proofs.

It appears on the face of the bill that, before this suit was instituted, a regular demand was made on defendant bank for an account and settlement of the public moneys received by it on deposit by Cannon in his official capacity, and such demand was positively refused. As the defendant Cannon failed to appear on the proper rule day, and file plea, demurrer, or answer, an order was duly entered to take the bill pro confesso; and, 30 days having elapsed since such order was entered, this cause may be proceeded in ex parte against him, as provided in eighteenth equity rule.

The defendants' counsel properly insisted that the demurrer of defendant bank only admits the truth of the allegations of fact in the bill that are properly pleaded, and not matters of inference and argument or conclusions of law, however clearly they may be stated. A general demurrer presents objections to the equities of the case dependent upon the facts alleged in the bill, and must be determined upon the assumption of the truth of such allegations; and all legal inferences and conclusions of law are matters for the judicial notice of the court. A decretal order overruling a demurrer in equity does not determine the merits of a case, but only affords an expression of the opinion of the court that the allegation of the facts in the bill and the reasonable inferences deduced therefrom are sufficient to entitle the plaintiff to the relief sought. The defendant will have opportunity, by plea or answer, to disclose facts, and sustain them by evidence, and thus controvert the allegations in the bill; and he will not be estopped by the implied admissions of facts arising from his previous demurrer, as such admissions were only for the purposes of the argument.

Upon this hearing, on demurrer, the implied admissions of the defendant bank bring the case clearly within the ancient and fundamental principles of equity, well settled by text writers and numerous authorities, that all persons coming into the possession of trust property, with notice of the trust, shall be considered in equity as trustees, and bound with respect to that property to comply with the requirements and purposes of the trust; and when a party has dealings with a trustee, with actual or constructive notice of the trust, he will be required to repay to the trust fund any moneys which he may have received in consequence of the breach of trust. In such transactions a party is regarded in equity as conniving with the trustee in a violation of his duty, and will be declared by the court a constructive trustee, without any reference to the intentions of the parties concerned, either express or implied. In this case it is not necessary for the court to hold the defendant bank as a constructive trustee, as it voluntarily assumed the duties and obligations of an implied trust arising out of the conduct and manifest intention of the parties when the public moneys were deposited and received.

National banks are created and their franchises are defined by acts of congress; and in some degree they are under the visitorial supervision of the government, but they are private corporations, and not parts of the government, although in some respects they are quasi public institutions, and designed to aid the government

when employed as financial agents in the public service. Their currency is secured by the deposit of bonds of the United States, and the government has a prior lien on their assets for the redemption of their currency. If designated as depositories of public moneys, they must give such satisfactory security by deposit of United States bonds as may be required by the secretary of the treasury for the safe-keeping and prompt payment of the public moneys deposited, and the faithful performance of their duties as financial agents. National banks not designated as depositories cannot lawfully receive public moneys on deposit, except in the case of postmasters making deposits under peculiar and specified circumstances. By positive law and the specific regulations of the post-office department (Postal Laws & Regulations, p. 72), all postmasters receiving public moneys in their official capacity are custodians of the funds collected by them or placed in their possession and custody, and are required to keep them safely, without loaning, using, depositing in banks, or exchanging for other funds than as specially allowed by law, until ordered by the postmaster general to be transferred or paid out. Where there is no designated depository in the county where a post office is situated, the postmaster may at his own risk, and in his official capacity, make deposits in a national bank in his town or city; but he or any other person cannot demand or receive, directly or indirectly, interest on such deposits. A national bank that knowingly receives such funds from a postmaster under such permissive authority, and opens an account with him in his official capacity, assumes a fiduciary relation to the government by reason of the privilege conferred,—the confidence reposed, and the risk of possible loss. This implied authority of law to receive public moneys on deposit is, in effect, equivalent to an express delegation of authority to receive, and constitutes such national bank a bailee of the government, and it assumes the obligation of safely keeping the public moneys thus deposited and accepted; and any undue negligence or nonobservance of law on its part has the legal effect of fraud and breach of the trust and confidence expected and reposed under the sanction of positive law. Such funds are to be held and safely kept for the purposes intended, and can only lawfully be withdrawn by a postmaster under orders of the post-office department to meet the legitimate requirements of the public service. The bank, as a lawfully authorized bailee of such funds, is presumed to know the law regulating the care, custody, and disposition of the same,—and cannot, without incurring liability, knowingly allow the postmaster, by private check, to withdraw such funds for his personal use, and cannot under any circumstances retain and apply such funds in satisfaction of the personal indebtedness of the postmaster on private account. The fact that the public moneys deposited by the postmaster in his official capacity were mingled with the funds of the bank, so as to lose their identity, did not impair the legal and equitable rights of the government, which still remain as a charge upon the entire mass of the bank funds until the trust moneys are fully restored to the rightful owner. If the bank was insolvent, and was in process of

liquidation, the United States, by not taking the security required by law to guard against possible loss of public moneys deposited and received by permissive authority, would be in the position of other creditors in the distribution of the insufficient assets of the bank, who had no connection with the misapplication of the trust funds. Cook Co. Nat. Bank v. U. S., 107 U. S. 445, 2 Sup. Ct. 561.

From the facts alleged in the bill, and impliedly admitted by the demurrer, it appears that the defendant Cannon, as postmaster, received large sums of money from the United States, and deposited the funds in his official character in the defendant bank, and opened an account as postmaster, and was furnished with a pass book, in which his official account was stated and entered by the officers of the bank. The bank was fully aware of the duties and obligations of the postmaster to the government, and it knowingly allowed him, to some extent, to withdraw these trust funds on private checks, for individual purposes, which caused a deficit in his official account, but there was still a large balance of the public funds deposited by him as postmaster; that to meet, in some degree, his deficit on official account, and shortly after his removal from office, he deposited in said bank $600, and directed the same to be applied as a credit to his official account. By such direction of the depositor, this sum of $600 became a part of the trust fund belonging to the United States, and could not be applied in payment of the debts which he owed the bank on private account. This question is not very material as to the result of this case as it appears on demurrer, as I regard the bank as under direct liability to complainants for any balance of the trust funds which it accepted as bailee after deducting the sums of money legitimately withdrawn by the postmaster, and applied to the purposes for which such public moneys were designed when deposited.

The counsel, in their written arguments and briefs, presented many questions of law they deemed involved, some of which I will briefly enumerate: The adequacy of a remedy at law that excludes equity jurisdiction; the principles of equity that authorize a bill for discovery and account even where there is some remedy at law; the exclusive jurisdiction in equity to adjust and enforce executory trusts; the contracts and relations between depositors and banks; the extent and nature of a banker's lien conferring the right to retain funds of depositors to meet their personal indebtedness; the nature of general deposits and special deposits; the duty and obligation of banks to honor and pay the checks of depositors; the liability of persons in possession of trust funds with notice of the trust; the rights of cestuis que trustent in a court of equity to follow misapplied trust funds so far as they can be clearly identified, or traced to other property into which converted; and as to how far trust moneys mingled and confounded in a general mass of same description can be ascertained and applied to the purposes of the trust. I have examined the authorities cited by counsel as far as they were conveniently accessible, but, with the views which I entertain, I deem it unnecessary to consider further many of the interesting questions of law presented in arguments and briefs.

With the facts before me on admissions of demurrer, I regard the defendant bank as responsible to the United States for any balance of public moneys under the directly assumed obligations of a lawfully authorized bailee for valuable consideration. The bank was, by law, accorded the permissive privilege of receiving public moneys from a postmaster without furnishing the security required of national banks that are expressly designated depositories. By this indulgence, the government incurred possible risk of loss if the bank should become insolvent; and the bank was relieved from the rigid penalties imposed upon private and unauthorized banks knowingly receiving deposits of public moneys by holding their receiving officers as guilty of embezzlement. A person dealing with officers of the government must take notice of the extent and nature of the authority conferred by law in their official capacity; and the United States are only bound by acts of officers which come within the just exercise of official powers. The defendant bank, by receiving public moneys deposited by postmaster in his official capacity, and by virtue of express authority conferred by law, assumed to some extent the obligations of a designated depository, and became, not a financial agent, but a bailee, bound to exercise the highest degree of care over the funds placed in its custody under the peculiar circumstances. Even if this legal proposition is too broad and stringent, under well-settled principles of equity the acceptance of public moneys by the bank, with full knowledge of their fiduciary character and the confidence reposed by the government, were sufficient to create a duty to devote such funds to the purposes intended by the deposit of such trust funds. McKee v. Lamon, 159 U. S. 317, 16 Sup. Ct. 11. If the bank assumed no higher obligations than those imposed upon a gratuitous bailee at common law, it was bound, in good faith and in law, to restore to the government on demand the public moneys deposited which had not been paid out by authority of law upon the official checks or orders of a rightful public officer. But the bank was more than an ordinary mandatary bailee, and its primary duty and obligation was to the United States, and not to the official agent who made the deposit. Its duties and obligations were imposed and defined by positive law, founded upon considerations of public policy. It must be presumed to know the law applicable to this peculiar kind of bailment. Such funds could not be used by bailee for the purpose of demanding and receiving interest. They were in the nature of special deposits for government purposes, and could only be withdrawn in the manner provided by law. If withdrawn on the official checks of the postmaster, and applied by him to his personal purposes, the bank would not be responsible, unless it had actual or constructive knowledge of the unlawful intention and purpose of the postmaster when the checks were drawn or presented and paid; for, as the checks were in proper form, the bank would have a right to presume that he was lawfully performing his official duty. The public moneys deposited by the postmaster in the bank did not come within the ordinary rules of law which establish the relation of creditor and debtor between depositors and

banks, and require the banks to honor and pay the checks of depositors when they have funds applicable to such purpose, and authorize the banks, by way of lien, to retain personal funds of depositors to satisfy individual indebtedness to the banks. The deposit of public moneys in this case in no way misled the bank, or was calculated to induce the bank to extend the personal credit of the official depositor. National Bank v. Insurance Co., 104 U. S. 54. If the bank, as bailee, mingled these public moneys in the general mass of its own funds, it may be that the bank violated the law by directly or indirectly demanding and receiving interest; as it had no authority to loan such funds, and there was, by law, positive prohibition. The funds certainly did not lose the character they had when deposited, and all the funds of the bank became, in equity, trust funds of the United States, until the just claims of the government are adjusted and paid.

The counsel of the defendant bank insisted that the plaintiffs had a clear and adequate remedy at law against the postmaster and his sureties on official bond, and therefore could not resort to a court of equity for relief. The adequate, appropriate, and only remedy of the plaintiffs against the bank was in equity, and not at law. A court of equity has exclusive jurisdiction in administering and enforcing executory trusts, and a complaining cestui que trust has no remedy at law against a trustee for acts done in that capacity. The bank only occupied towards the plaintiffs the relationship of trust and confidence to keep the public moneys safely, and only allow them to be withdrawn in the manner provided by law. The adjustment and settlement of the affairs of such fiduciary relationship, when controverted questions of liability arose between them, gave rise to the necessity for discovery and account showing the condition and disposition of the funds of the executory trust, to enable a court of equity to determine the rights of parties by allowing all just credits and ascertaining any balance due from the bank. The fact that the plaintiffs have cumulative remedy at law against the postmaster on his official bond did not preclude the plaintiffs from the more convenient and effectual remedy in equity against the bank, as trustee of public moneys accepted by trustee. The plaintiffs had the right to seek the enforcement of the executory trust in equity, and proceed in same suit against all parties who have in possession any of the trust funds, or who knowingly participated in transactions affecting the subject-matter of the trust. As the public moneys were deposited by authority of law, and no security was required of the bank by the deposit of the United States bonds, the manifest object of the law in requiring the postmaster to deposit at his own risk was to reserve and continue the liability of him and sureties on official bond if the bank should become insolvent, and loss should be incurred by the creditors asserting equality of claim in the distribution of insufficient assets.

After careful consideration of all matters appearing in this case, the court directs a decretal order to be entered of record, overruling the demurrer, and requiring defendant bank to file plea or answer.